# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: August 15, 2017

* * * * * * * * * * * * * * * *
JASON CLUBB,

                Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

                Respondent.
* * * * * * * * * * * * * * * *

No. 15-891V

Special Master Sanders

Motion to Dismiss; Chronic
Inflammatory Demyelinating
Polyneuropathy ("CIDP");
Tetanus-diphtheria-acellular-
pertussis ("Tdap") Vaccine; Statute
of Limitations; Equitable Tolling.

Renee J. Gentry, Vaccine Injury Clinic, George Washington Univ. Law School, for Petitioner.
Adriana R. Teitel, United States Department of Justice, Washington, DC, for Respondent.

## DECISION GRANTING MOTION TO DISMISS[1]

On August 18, 2015, Jason Clubb ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.  42 U.S.C. § 300aa-10 to -34 (2012).[2] (the "Vaccine Act" or "Program").  Pet., ECF No. 1.  Petitioner alleged that he suffered from chronic inflammatory demyelinating polyneuropathy ("CIDP") as a result of an influenza ("flu") vaccination.  *Id.*  Petitioner also alleged that the onset of his symptoms was August 18, 2012.  *Id.* at 1.

On September 18, 2015, Petitioner filed an amended petition alleging that his CIDP was caused by, or (in the alternative) significantly aggravated by the Tetanus-diphtheria-acellular-pertussis ("Tdap") vaccination that he received on July 31, 2012.  Am. Pet., ECF No. 8 at 1.  In

---

[1] This decision shall be posted on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)).  As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party:  (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

his amended petition, Petitioner again asserted that the onset of his symptoms occurred on August 18, 2012. *Id.* Petitioner stated that he was hospitalized and diagnosed with Guillain-Barré Syndrome ("GBS") that ultimately became chronic and developed into CIDP. *Id.* at 1-2.

On January 13, 2016, Respondent filed a motion to dismiss Petitioner's claim. Mot. Dismiss, ECF No. 14. Respondent cited evidence in Petitioner's medical records that Petitioner's symptoms began on August 17, 2012. *Id.* Respondent stated that Petitioner had until August 17, 2015 to file a timely petition pursuant to the Vaccine Act. 42 U.S.C. § 300aa-16(a)(2). Respondent argued that the claim should be dismissed because the statute of limitations had run at the time of Petitioner's filing on August 18, 2015. *Id.*

In his Opposition, Petitioner did not dispute that the petition was untimely filed. Opp'n, ECF No. 32. Instead, Petitioner moved "this Court to apply equitable tolling to the limitations period to Petitioner's case." *Id.* at 1. Respondent and Petitioner filed replies in support of their respective positions. ECF Nos. 33, 36, 37. Petitioner again did not dispute Respondent's conclusion that the petition was untimely filed, but stated that he wanted to clarify his position. Pet'r's Sur-Reply, ECF No. 36. Petitioner stated that "he is not requesting an application of the discovery rule, but respectfully moves this Court for an application of the doctrine of equitable tolling . . . ." *Id.* at 1. On May 11, 2017, the undersigned held a status conference to discuss the completeness of the record and ordered Petitioner to file additional records from Petitioner's hospitalization from August 20-28, 2012. Order, ECF No. 40. Petitioner filed the requested records on June 22, 2017. ECF No. 42.

After careful consideration, the undersigned has found that equitable tolling does not apply to Petitioner's claim, and **GRANTS** Respondent's motion to dismiss.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Medical Records

Petitioner's original and amended petitions asserted that his symptoms began on August 18, 2012. Pet.; Am. Pet. However, Petitioner's medical records document a call that Petitioner made to his primary care physician's "Call-A-Nurse" service on August 17, 2012, while Petitioner was at the beach. Pet'r's Ex. 7 at 239, ECF No. 11-1. During that call, Petitioner complained of "numbness in his finger tips and 'bottoms of feet.'" *Id.* Petitioner was "advised to contact [his primary care physician] on Monday for follow up and/or if symptoms worsen, call back or seek assistance at the beach." *Id.* Petitioner was seen by emergency personnel on August 18, 2012, but his test results were normal and no further action was taken at that time. *Id.* at 238.

On August 19, 2012 after his return home, Petitioner again used his physician's "Call-A-Nurse" service to report that his symptoms had worsened and spread to his tongue. *Id.* Petitioner followed advice from the on-call nurse practitioner and sought in-person treatment. Petitioner went to the emergency room and reported to the triage nurse that he was suffering numbness and heaviness in his legs. Pet'r's Ex. 6 at 22, ECF No. 10-2. He stated that the symptoms began August 17, and had continued to worsen and spread. *Id.* Petitioner presented

to the treating physician's assistant with "upper extremity altered sensation" that started about seven days prior, or August 12, 2012, according to the medical record.  Pet'r's Ex. 7 at 233. Petitioner was diagnosed with disturbance of sensation and acute cervical strain.  *Id.* at 235.  He was referred to a neurologist and an orthopedist.  *Id.*

On the following day, August 20, 2012, Petitioner returned to the emergency room complaining of "tingling all over" and numbness for approximately three days prior.  Pet'r's Ex. 6 at 36.  Petitioner presented with weakness of the right arm, right hand, right leg, left arm, left hand, and left leg.  Pet'r's Ex. 10 at 31, ECF No. 42. Petitioner was admitted to the hospital with a diagnosis of probable GBS.  Pet'r's Ex. 6 at 35.  Petitioner did not exhibit impaired speech. Pet'r's Ex. 10 at 32.  Petitioner was able to communicate with medical personnel about his symptoms and treatment.  *Id.* at 35.

Petitioner remained at the hospital until his discharge on August 28, 2012.  Pet'r's Ex. 6 at 26.  He was diagnosed with GBS, dysphagia,[3] and headache.  *Id.*  Petitioner's medical records detail his drug regimen and contain notes from treating personnel that document Petitioner's alertness and ability to communicate throughout his week-long hospitalization.  *See generally* Pet'r's Ex. 6; Pet'r's Ex. 10.  On the day of admission, Petitioner was described as alert and oriented with normal mood, affect, and speech.  Pet'r's Ex. 6 at 32.  Later on the day of admission, Petitioner remained alert and communicative, but his speech took on a nasal quality. *Id.* at 385.  Petitioner remained in the hospital for eight days; however, he remained able to communicate with medical personnel about his course of treatment and rehabilitation.  A progress report dated August 22, 2012 states, "Pt eager to do work" and "Pt asking appropriate questions throughout."  *Id.* at 441.

Petitioner received a neurologic exam on August 24, 2012, and was described as "[a]wake, alert, and oriented. Cranial nerves intact.  Sensation intact.  Sitting balance is good. Speech and cognition is fairly good, but he can see his little cotton mouth and his not getting much lip movement when he speaks, so he sounds a little dysarthric."  *Id.* at 367.  Neurologic notes from the day before Petitioner's discharge again refer to Petitioner as "alert and oriented" with the ability to follow commands despite some speech dysarthria.[4]  *Id.* at 425.  Petitioner's dysarthria persisted; however, the neurologic notes from Petitioner's discharge summary again describe him as "alert and oriented."  *Id.* at 54.  After further treatment and examination, Petitioner was ultimately diagnosed with CIDP sometime in the September-October of 2012 time period.  Pet'r's Ex. 4 at 14-16, ECF No. 7-4.

---

[3] Dysphagia is "difficulty in swallowing."  *Dysphagia, Dorland's Medical Dictionary,* https://www.dorlands.com//def.jsp?id=100033183 (last visited Aug. 10, 2017).

[4] Dysarthria is "a speech disorder consisting of imperfect articulation due to loss of muscular control after damage to the central or peripheral nervous system."  *Dysarthria, Dorland's Medical Dictionary*, https://www.dorlands.com//def.jsp?id=100032961 (last visited Aug. 10, 2017).

## B.  Motion to Dismiss

On January 13, 2016, Respondent filed the present Motion to Dismiss and argued that "the petition was filed beyond the Vaccine Act's statute of limitations period."  Mot. Dismiss 1. Respondent cited to multiple places in the medical record to establish that Petitioner's neurological symptoms that developed into CIDP were first noticed by Petitioner on August 17, 2012.  *Id.* at 2.  Respondent argued that Petitioner had until August 17, 2015 to file a claim and missed that deadline by one day.  *Id.* at 5.  Respondent also argued that equitable tolling did not apply and requested that the petition be dismissed as untimely.  *Id.*

Petitioner opposed Respondent's Motion to Dismiss on October 24, 2016.  Opp'n at 1. Petitioner did not dispute that his petition was filed after the statute of limitations had expired. *Id.*  Instead, Petitioner asserted that equitable tolling applies "(1) to provide an equitable remedy for petitioners whose physical impairments prevent filing a timely claim, (2) to appropriately accommodate petitioners (seeking compensation in a petitioner-friendly forum) who suffer from an injury that may wane and then evolve into a new injury, which is characterized by progressive symptoms, and (3) to remedy petitioners who file petitions compared to claimants represented by counsel."  *Id.* at 1.  A fourth argument that the vaccine administrator's failure to provide Petitioner with a vaccine information sheet is also grounds for equitable tolling was also discussed by Petitioner in his opposition.  *Id.* at 13-14.

Respondent replied on November 11, 2016, followed by Petitioner's sur-reply on November 14, 2016, and Respondent's sur-sur-reply on November 18, 2016.  Resp't's Reply, ECF No. 33; Pet'r's Sur-Reply, ECF No. 36; Resp't's Sur-Sur-Reply, ECF No. 37.  Respondent addressed all of Petitioner's arguments in his first reply, citing the record and case law where appropriate.  *See generally* Resp't's Reply.  Petitioner's sur-reply focused largely on his physical impairment argument and included a rather detailed summary of Petitioner's medical history. *See generally* Pet'r's Sur-Reply.  Respondent's sur-sur-reply is shorter and addressed specific attacks to his argument made by Petitioner.  *See generally* Resp't's Sur-Sur-Reply.  Generally, the subsequent filings did not present any additional information, but merely served to reiterate and occasionally strengthen points previously made.  The matter is now ripe for a ruling on Respondent's motion to dismiss.

## II.    STANDARDS FOR ADJUDICATION

The statute of limitations contained within the Vaccine Act reads "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence *of the first symptom* or *manifestation of onset* or of the significant aggravation of such injury."  § 16(a)(2) (emphasis added).  The Vaccine Act does not contain a discovery rule, explicit or implicit, where the statute of limitations begins once the petitioner knows that their alleged injury was caused by a vaccine.  *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1336-37 (Fed. Cir. 2011).

It is well established, however, that equitable tolling of the limitations period is generally available in vaccine cases to create a means for obtaining "redress and restitution" for vaccine injuries in a "fair, expeditious, and generous manner."  *Id.* at 1325-26.  Following *Irwin v.*

*Department of Veterans Affairs*, 498 U.S. 89, 96 (1990), and *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005), the Federal Circuit has held that a petitioner must "[establish] two elements: (1) that [he] has been pursuing [his] rights diligently, and (2) that some extraordinary circumstance" such as "defective pleading, fraud, or duress . . . stood in the way." *Wax v. Sec'y of Health & Human Servs.*, No. 03-2830V, 2012 WL 3867161, at *3, *10 (Fed. Cl. Spec. Mstr. Aug. 7, 2012) (citing *Cloer*, 654 F.3d at 1344-45), *aff'd*, 108 Fed. Cl. 538 (2012). "Extraordinary circumstances" are situations that are more than unusual; they are "unique" and "rare" in their occurrence. *Mojica v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 96, 100-01 (2011) (finding equitable tolling where petitioner's petition was lost twice by a "[w]ell-established and well-known" courier service).

Citing the Supreme Court's decision in *Irwin*, the Federal Circuit in *Cloer* recognized that the doctrine of equitable tolling should be used sparingly and only in extraordinary circumstances. 654 F.3d at 1344-45 (citing 498 U.S. at 96). It may be available when a petitioner can show "for example, [he or she] has been the victim of a fraud, or of duress." *Id.* at 1344.

In *Barrett,* the Federal Circuit interpreted 38 U.S.C. § 7266(a), to allow for equitable tolling based on mental illness. *Barrett v. Principi,* 363 F.3d 1316, 1318 (Fed. Cir. 2004). The Federal Circuit stated that to gain the benefit of equitable tolling, "a veteran must show that the failure to file was the direct result of mental illness that rendered him incapable of 'rational thought or deliberate decision making,' . . . or 'incapable of handling [his] own affairs or unable to function [in] society.'" *Id.* at 1321 (citations omitted). The Court did not extend the due diligence requirement to cases where mental illness is the basis for a claim of equitable tolling. In fact, "any steps to advance a legal claim would likely be considered evidence that the person could handle his (or her) affairs." *Hodge v. Sec'y of Health & Human Servs.*, No. 09-453V, 2015 WL 9685916, at *8 (Fed. Cl. Spec. Mstr. Dec. 21, 2015). Special Masters have extended this to the Vaccine Program. *See generally id.*; *Gray v. Sec'y of Health & Human Servs.*, No. 15-146V, 2016 WL 787166, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).

In the present case, Petitioner advanced a claim of equitable tolling based on a physical impairment. The Federal Circuit has extended the reasoning in *Barrett* to include "physical illnesses or conditions that impair cognitive function or the ability to communicate" in cases before similar courts. *Arbas v. Nicholson,* 403 F.3d 1379, 1381 (Fed. Cir. 2005). I see no reason that extension should not be applicable within the Vaccine Program. After providing Petitioner with additional time to supplement the record with medical history to support his claim, the undersigned does not find sufficient evidence that Petitioner suffered from a physical impairment sufficient to trigger equitable tolling.

## III.   DISCUSSION

### A. Physical Impairment

The record contains several conflicting dates related to the onset of Petitioner's symptoms. Petitioner alleged an onset date of August 18, 2012 in his petition. Pet. The medical records, however, provide evidence that the symptoms may have appeared as early as August 12,

5

2012 and as late as August 17, 2012.  Pet'r's Ex. 7 at 233; Pet'r's Ex. 6 at 22.  Medical records created contemporaneously with the events they describe are considered more reliable, as a general rule, than later recollections.  *See, e.g., Cucuras v. Sec'y of Health & Human Servs.,* 993 F.2d 1525, 1528 (Fed. Cir. 1993).  In addition, "[w]ritten records which are, themselves, inconsistent, should be accorded less deference than those that are internally consistent." *Murphy v. Sec'y of Health & Human Servs.,* 23 Cl. Ct. 726, 733 (1991), *aff'd*, 968 F.2d 1226 (Table) (Fed. Cir. 1992).

Where the contemporaneous medical records are inconsistent, the prevailing case law is less instructive.  Therefore, the records must be considered alongside all of the filings and other evidence in the case to develop "a coherent account of events that is as consistent as possible with the most reliable records."  *Id.*

There is one instance in the medical record where it is suggested that Petitioner's symptoms began as early as August 12, 2012, contrary to Petitioner's claim in his pleadings that the onset was August 18, 2012.  Pet'r's Ex. 7 at 233; Pet.  The complete medical record, however, overwhelmingly identifies August 17, 2012 as the onset date.  This is largely due to the records of the calls Petitioner made to the nurse concierge on August 17th and 18th describing his condition.  *See* Pet'r's Ex. 7 at 238, 239.  Based on the totality of the record, the undersigned finds that Petitioner's symptoms began on August 17, 2012. A majority of courts addressing this issue have found that, applying the rule excluding the date of accrual, the statutory period still ends on the anniversary date of the event which triggers the beginning of the statute of limitations.  *Spohn v. Sec'y of Health & Human Servs.*, No. 95-0460V, 1996 WL 532610, at *3 (Fed. Cl. Spec. Mstr. Sept. 5, 1996) (applying Federal Rule of Civil Procedure Rule 6(a)'s exclusion of the date of accrual for statute of limitations calculations), *mot. for review denied*, (Fed. Cl. Jan. 10, 1997), *aff'd*, 132 F.3d 52 (Fed. Cir. 1997).  Petitioner's statute of limitations therefore began on August 18, 2012 at 12:01 AM and ended at midnight on August 17, 2015. *See id.* at *2-*3.  Petitioner filed his claim on August 18, 2015, and it is therefore untimely.  An application of equitable tolling is necessary to preserve his claim.

Petitioner included in his second response to Respondent's motion a fairly detailed "synopsis of petitioner's impairments that rendered him incapable of carrying out his daily affairs in a manner that would allow him to pursue his legal rights for a material period of time." Pet'r's Sur-Reply 3.  Petitioner stated that he was hospitalized and that he experienced a "progressive decline in his ability to function physically, communicate, and comprehend others." *Id.* at 4.  His filed medical records detail hospital admissions, including one of particular relevance in August of 2012 that is also cited by Petitioner in his pleadings.  Petitioner noted that during his hospitalization he was non-ambulatory and bed-bound due to paralysis.  *Id.*  Petitioner also suffered from facial paralysis and difficulty eating and swallowing.  *Id.*  All of these symptoms are supported by documentation in the medical records; however, they are not evidence of a mental impairment that "rendered him incapable of rational thought or deliberate decision making,' . . . or 'incapable of handling [his] own affairs or unable to function [in] society.'"  *Barrett,* 363 F.3d at 1321.

Petitioner asserted that "[w]ithin days and weeks following his vaccination, [Petitioner] lost his ability to communicate."  Pet'r's Sur-Reply 4.  However, he does not cite to any medical

records for support, and the undersigned was unable to find any evidence that Petitioner was unable to communicate for any period of time.

Petitioner described "persistent numbness in his feet and hands," severe motor skill dysfunction and sensory impairment, difficulty ingesting food, fatigue, and paresthesias. *Id.* These symptoms are also documented within Petitioner's medical records along with his initial diagnosis of GBS and final diagnosis of CIDP. Pet'r's Ex. 4 at 14-16. Unfortunately, the development of GBS and CIDP is a common occurrence among the extremely rare vaccine reactions that are compensated through this Program. *See, e.g., Blackburn v. Sec'y of Health & Human Servs.,* No. 10-40V, 2015 WL 425935, at *1-*6 (Fed. Cl. Spec. Mstr. Jan. 9, 2015); *Keaton v. Sec'y of Health & Human Servs.,* No. 12-444V, 2014 WL 3696349, at *3-*4 (Fed. Cl. Spec. Mstr. July 2, 2014); *Goza v. Sec'y of Health & Human Servs.,* No. 07-290V, 2008 WL 6082761, at *1-*3 (Fed. Cl. Spec. Mstr. Aug. 1, 2008). Petitioner described the intrusive nature of his treatments and the loss of independence that comes with a diagnosis of CIDP. Pet'r's Sur-Reply 6-7. Petitioner spoke at length with his doctors about his frustration at losing the ability to handle every day processes that he was previously able to do without assistance, such as walking, dressing, and eating. *Id.* Indeed, the progressive and debilitating nature of CIDP is what makes this condition so traumatic.[5] Adjusting to these limitations would cause most people to feel as though they were unable to function in society. The undersigned appreciates the hardships that Petitioner has and will continue to face moving forward. These limitations, however, did not affect Petitioner's cognitive abilities in a way that would prevent him from pursuing his legal rights.

Petitioner stated that at some point he suffered from dysphasia, "which caused him to lose the ability to speak and comprehend language." Pet'r's Sur-Reply 6. This condition, in its more severe forms, could certainly affect a petitioner's ability to pursue a legal claim. However, a careful reading of the medical history from the time Petitioner was diagnosed with that condition revealed that Petitioner suffered from difficulty swallowing, but retained his cognitive abilities. Pet'r's Ex. 6 at 27. Petitioner was able to advise the treating physician that he suffered from stomach discomfort and lack of appetite. *Id.* Additionally, Petitioner was able to discuss discharge instructions and post-hospitalization treatment plans. *Id.* There is no evidence that Petitioner suffered from dysphasia that rendered him unable to communicate or comprehend language. Petitioner cited to Petitioner's Exhibit 5 on page 7; however, that record states that Petitioner's "[m]ental status, language function and cognitive function are intact." Pet'r's Ex. 5 at 7. The record goes on to stress that Petitioner's "[f]und of knowledge is excellent." *Id.*

Petitioner does concede that "throughout his medical assessments, his neurological examinations generally note an intact status as to speech, language, memory, and cranial nerves," but argues that "this test serves to indicate a level of consciousness, generally utilized for persons brought into emergency rooms for severe accidents and is not an accurate measure of mental or

---

[5] CIDP is characterized by "progressive weakness and impaired sensory function in the limbs." Symptoms often include "tingling or numbness of the digits, weakness of the limbs, hyporeflexia or areflexia, fatigue, and abnormal sensations." *Chronic Inflammatory Demyelinating Polyneuropathy, Dorland's Medical Dictionary*, https://www.dorlands.com//def.jsp?id=117991367 (last visited Aug. 14, 2017).

physical impairment as per *Barrett, Ardas,* and *Hodge.*"  Pet'r's Sur-Reply 7.  Petitioner did not provide any medical or legal basis for this argument, and it is unpersuasive given the extensive documentation of Petitioner's cognitive health in the neurologic notes taken during his hospitalization and follow-up exams.  There is no evidence that Petitioner suffered a physical impairment that would trigger equitable tolling.

## B.  Evolving Injury

Petitioner made alternative arguments in support of his contention that "extraordinary circumstances" warrant equitable tolling in his case.  His second argument is based on the premise that "equitable tolling should apply if the petitioner could not have known that [he] suffered the injury for which [he] seeks compensation."  Pet'r's Sur-Reply 11.  Petitioner vehemently denied that this is a request for the application of a discovery rule; he asserted instead that Petitioner's ultimate injury was unknown during the early stages due to the evolving nature of GBS into CIDP.  *Id.* at 12.  Petitioner "could not have known that he suffered CIDP" because "the diagnosis of CIDP is not considered until a patient thought to have GBS deteriorates again after 8 weeks from onset."  *Id.*  Therefore, Petitioner argued, the first manifestation of his injury does not occur until eight weeks after his GBS diagnosis.

The Federal Circuit held in *Cloer* that "Congress made the deliberate choice to trigger the Vaccine Act statute of limitations from the date of occurrence of the first symptom or manifestation of the injury for which relief is sought, an event that does not depend on the knowledge of a petitioner as to the cause of an injury."  *Cloer*, 654 F.3d at 1338.  Accordingly, this choice serves as confirmation that a Vaccine Act cause of action accrues at that time, "not at a later date when a petitioner may have knowledge that the vaccine caused the injury."  *Id.*  Petitioner is correct that he could not be diagnosed with CIDP until after his GBS condition worsened; however, the neurological symptoms that are characteristic of both of these closely related conditions were immediately identifiable from Petitioner's initial complaints on August 17, 2012.  Furthermore, CIDP is a sequela of GBS, and the onset of the sequela from an acute condition does not reset the statute of limitations period for a resulting chronic condition.  *Chronic Inflammatory Demyelinating Polyneuropathy, Dorland's Medical Dictionary*, https://www.dorlands.com//def.jsp?id=117991367 (last visited Aug. 14, 2017); *Cloer*, 654 F.3d at 1334-35.  Petitioner's argument attempted to draw a distinction where there is not one, and equitable tolling cannot be used here to insert a discovery rule into the Vaccine Act.

## C.  Vaccine Information Sheet

Petitioner next argued that his vaccine administrator's failure to provide him with a vaccine information sheet should be grounds for equitable tolling.  Pet'r's Sur-Reply 13.  Petitioner asserted that "[t]he administrator's mistake delayed [Petitioner's] discovery of the VICP [Vaccine Injury Compensation Program]; absent this mistake by a third-party [Petitioner] would have filed his petition much earlier."  *Id.*  Presumably to make his argument stronger, Petitioner specifically identified the actual harm he experienced without the information sheet.  *Id.* at 14.  Unfortunately for Petitioner, it is well established in Program decisions that ignorance of the VICP "is not a proper basis for applying equitable tolling."  Resp't's Sur-Sur Reply 3 (citing *Wax v. Sec'y of Health & Human Servs.,* No. 03-2823, 2012 WL 3867161, at *11 (Fed.

Cl. Spec. Mstr. Aug. 7, 2012), *aff'd,* 108 Fed. Cl. 538 (2012); *Anderson v. Sec'y of Health & Human Servs.,* No. 12-16V, 2013 WL 691003, *5-*6 (Fed. Cl. Spec. Mstr. Jan 29, 2013)). This reasoning also undercuts Petitioner's leading argument that a physical impairment prevented him from timely filing his claim. If Petitioner would have had knowledge of the Program and been able to file all of his paperwork in a timely manner but for this mistake by the administrator, it is doubtful that he was simultaneously unable to engage in deliberate decision making and handle his own affairs.

### D. *Pro Se* Petitioner's Disadvantage

Finally, Petitioner argues that his status as a *pro se* petitioner placed "heavier burdens and shorter time limits" on him than those represented by counsel. Opp'n 12-13. Yet, Petitioner was not precluded from obtaining counsel prior to filing his claim. In fact, the Program's website provides a list of attorneys who have expressed a willingness to accept vaccine injury cases that is offered as a convenient reference to *pro se* petitioners and potential petitioners in the Program. *Vaccine Claims/Office of Special Masters, United States Court of Federal Claims*, http://www.cofc.uscourts.gov/vaccine-programoffice-special-masters (last visited Aug. 10, 2017). Furthermore, unlike many courts where individuals are seeking legal redress, the Program will often pay attorneys' fees when petitioners are unsuccessful. § 15(e). This increases the ease with which petitioners are able to procure representation regardless of their ability to pay. The Program does not provide a benefit to, nor place a burden upon, petitioners who decide to proceed *pro se*. However, they are expected to familiarize themselves with the rules of the Program, and follow them accordingly.

The Vaccine Program is designed to be a petitioner-friendly, no-fault program. The rules of evidence are relaxed and the adversarial nature of litigation is lessened to encourage cooperation and informal resolution. There is also a large degree of discretion built into the rules and procedures to ensure that the totality of the circumstances in every case is considered before an entitlement decision is rendered. The statute of limitations is one of the few procedural safeguards that the Vaccine Program has to provide the best guarantee of evenhanded administration of the law. *See Mohasco Corp. v. Morgan,* 447 U.S. 807, 826 (1980). Strict adherence to this filing requirement cannot be disregarded by special masters out of sympathy for any particular litigant. *See Baldwin Cty. Welcome Ctr. v. Celinda Brown,* 466 U.S. 147, 152 (1984); *see also, e.g., Spohn*, 1996 WL 532610 at *10 (dismissing the petition for falling one day outside the statute of limitations). In cases such as this, where the statute of limitations is missed by a single day, it can be difficult to dismiss a claim where there is a serious injury and a good-faith basis to file. Nonetheless, after a meticulous review of the record, Petitioner did not present evidence of any circumstance that would warrant the application of equitable tolling.

### IV.    CONCLUSION

Petitioner filed his petition on August 18, 2015. Pet. Although his original and amended petitions state that Petitioner initially experienced symptoms on August 18, 2012, his medical records contradict this assertion. Furthermore, Petitioner's subsequent filings conceded that the petition was filed after the expiration of the statute of limitations. Petitioner argued that equitable tolling applies to his claim (1) to provide a remedy for an incapacitating physical

impairment, (2) to accommodate an evolving injury, and (3) to ensure that *pro se* petitioners are not burdened with shorter time limits for filing than individuals represented by counsel. Petitioner has not established that he had a physical injury sufficient to trigger equitable tolling. Additionally, his arguments regarding the nature of his injury and the additional burdens placed on *pro se* petitioners are likewise unpersuasive.  Petitioner untimely filed his claim and equitable tolling is not applicable to extend the filing deadline.  Therefore, Respondent's Motion to Dismiss is **GRANTED.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above decision.[6]

**IT IS SO ORDERED.**

/s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint or separate filing of a notice renouncing the right to seek review.