# In the United States Court of Federal Claims

No. 15-891V
Filed Under Seal: February 7, 2018
Reissued for Publication: March 9, 2018[*]

|  |  |
|---|---|
| JASON CLUBB, ) | |
| ) | |
| Petitioner, ) | |
| ) | National Childhood Vaccine Injury Act, |
| v. ) | 42 U.S.C. § 300aa–1 to –34; Statute of |
| ) | Limitations; Equitable Tolling. |
| SECRETARY OF HEALTH AND ) | |
| HUMAN SERVICES, ) | |
| ) | |
| Respondent. ) | |
| ) | |

*Renée J. Gentry*, Counsel of Record, Vaccine Injury Clinic, George Washington University Law School, Washington, DC, for Petitioner.

*Adriana Ruth Teitel*, Trial Attorney, *Gabrielle M. Fielding*, Assistant Director, *Catharine E. Reeves*, Deputy Director, *C. Salvatore D'Alessio*, Acting Director, *Chad A. Readler*, Acting Assistant Attorney General, Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for Respondent.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.   INTRODUCTION

Petitioner, Jason Clubb, seeks review of the August 15, 2017, decision of the special master denying his claim for compensation under the National Childhood Vaccine Injury Act (the "Vaccine Act"), 42 U.S.C. § 300aa–1 to –34. Petitioner alleges that he suffered from chronic inflammatory demyelinating polyneuropathy ("CIDP") as the result of the influenza

---

[*] This Memorandum Opinion and Order was originally filed under seal on February 7, 2018 (docket entry no. 48). The parties were given an opportunity to advise the Court, by March 7, 2018, of their views with respect to what information, if any, should be redacted. On March 6, 2018, the parties informed the Court that no redactions were required (docket entry no. 50). And so, the Court reissues the Memorandum Opinion and Order, dated February 7, 2018, without any redactions.

vaccine, and that his CIDP was caused, or significantly aggravated, by the Tetanus-diphtheria-acellular-pertussis ("Tdap") vaccine. For the reasons set forth below, the Court **DENIES** petitioner's motion for review and **SUSTAINS** the decision of the special master.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**[1]

   **A. Factual Background**

In this Vaccine Act matter, petitioner, Jason Clubb, alleges that he suffered from CIDP as the result of the influenza vaccine, and that his CIDP was caused, or significantly aggravated, by the Tdap vaccine. *See generally* Amended Pet. On August 15, 2017, the special master denied petitioner's claim for compensation under the Vaccine Act as untimely. *Clubb v. Sec'y of Health & Human Servs.*, (Fed. Cl. Spec. Mstr. filed Aug. 15, 2017) (docket entry no. 43) ("Dec.").

   **1. Petitioner's Medical History**

In 2012, petitioner was hospitalized and ultimately diagnosed with GuillainBarré Syndrome ("GBS"). *Id.* Petitioner's GBS became chronic and developed into CIDP. *Id.*

With regards to the timing of the onset of petitioner's CIDP, petitioner's medical records document a call that he made to his primary care physician's "Call-A-Nurse" service on August 17, 2012. Pet. Ex. 7 at 239. During this call, petitioner complained of "numbness in [his] finger tips and 'bottoms of feet.'" *Id.* Petitioner was "advised to contact [his primary care physician] on Monday for follow up and/or if symptoms worsen [to] call back or seek assistance at the beach." *Id.*

On August 18, 2012, petitioner was seen by emergency medical personnel. *Id.* at 238. Petitioner's test results at that time were normal and no further action was taken. *Id.*

On August 19, 2012, petitioner again reported that his symptoms had worsened and spread to his tongue to his physician's "Call-A-Nurse" service. *Id.* At the advice of the service's on-call nurse practitioner, petitioner subsequently sought in-person medical treatment.

---

[1] The facts recounted in this Memorandum Opinion and Order are taken from the petitioner's amended petition ("Pet.") and exhibits filed during the proceedings before the special master ("Pet. Ex."). Except where otherwise noted, the facts recited herein are undisputed.

*Id.* To that end, petitioner went to the emergency room and reported to the triage nurse that he was suffering numbness and heaviness in his legs. Pet. Ex. 6 at 22. During this emergency room visit, petitioner stated that his symptoms began on August 17, 2012. *Id.* at 21-22.

According to the medical records for this emergency room visit, petitioner presented to the treating physician's assistant with "upper extremity altered sensation" that started about seven days prior. Pet. Ex. 7 at 233. Petitioner was diagnosed with disturbance of sensation and acute cervical strain. *Id.* at 235. And so, petitioner was referred to a neurologist and an orthopedist. *Id.*

On August 20, 2012, petitioner returned to the emergency room due to "tingling all over," numbness, and inability to perform fine motor skills for approximately three days prior. Pet. Ex. 6 at 36-37. During this emergency room visit, petitioner presented with weakness of the right arm, right hand, right leg, left arm, left hand, and left leg. Pet. Ex. 10 at 31.

Petitioner was admitted to the hospital with a diagnosis of probable GBS. Pet. Ex. 6 at 35. At the time, petitioner did not exhibit impaired speech. Pet. Ex. 10 at 32. And so, petitioner was able to communicate with medical personnel about his symptoms and treatment. *Id.* at 35.

On the day of his admission to the hospital, petitioner was described as alert and oriented with normal mood, affect, and speech. Pet. Ex. 6 at 32. Later that day, petitioner remained alert and communicative, but his speech took on a nasal quality. *Id.* at 385. Petitioner remained in the hospital for eight days. *Id.* at 26. Petitioner remained able to communicate with medical personnel about his course of treatment and rehabilitation during this hospitalization. *Id.* at 425, 427, 429, 434, 438, 441. In this regard, a progress report dated August 22, 2012, states that, "Pt eager to do work" and "Pt asking appropriate questions throughout." *Id.* at 441.

On August 24, 2012, petitioner received a neurologic exam and he was described as follows:

> [a]wake, alert, and oriented. Cranial nerves intact. Sensation intact . . . Sitting balance is good. Speech and cognition is fairly good, but he can see his little cotton mouth and his [sic] not getting much lip movement when he speaks, so he sounds a little dysarthric.

*Id.* at 367. Neurologic notes from the day before petitioner's discharge from the hospital similarly refer to petitioner as being "alert and oriented," with the ability to follow commands despite some speech dysarthria.[2] *Id.* at 425. Although petitioner's dysarthria persisted, the neurologic notes from petitioner's hospital discharge summary describe him as "alert and oriented." *Id.* In fact, petitioner's medical records detail his drug regimen and contain notes from treating personnel that document petitioner's alertness and ability to communicate throughout his week-long hospitalization. *See generally* Pet. Exs. 6, 10.

Petitioner was discharged from the hospital on August 28, 2012. Pet. Ex. 6 at 26. At the time of his discharge, petitioner was diagnosed with GBS, dysphagia,[3] and headache. *Id.* After further treatment and examination, petitioner was ultimately diagnosed with CIDP sometime in September or October of 2012. Pet. Ex. 4 at 14-16.

### 2. Proceedings Before The Special Master

On August 18, 2015, petitioner filed a petition pursuant to the Vaccine Act, alleging that he suffered from CIDP as a result of the influenza vaccination. Pet. at 2. On September 18, 2015, petitioner filed an amended petition alleging that his CIDP was caused, or, in the alternative, significantly aggravated, by the Tdap vaccination that he received on July 31, 2012. Am. Pet. at 2.

On January 13, 2016, the Secretary filed a motion to dismiss petitioner's claim upon the ground that the statute of limitations had run at the time of petitioner's filing on August 18, 2015. Resp't Mot. On October 24, 2016, petitioner filed an opposition to the government's motion to dismiss and requested that the special master apply equitable tolling to the limitations period in this case. *See generally* Pet'r's Opp. In his reply, the Secretary argued that there were no grounds for equitable tolling in this case. Resp't Reply.

---

[2] Dysarthria is "a speech disorder consisting of imperfect articulation due to loss of muscular control after damage to the central or peripheral nervous system." *Dysarthria*, *Dorland's Medical Dictionary* 575 (32d ed. 2012).

[3] Dysphagia is "[an] impairment of speech, consisting in lack of coordination and failure to arrange words in their order, due to a central lesion[.]" *Dysphagia, Dorland's Medical Dictionary* 579 (32d ed. 2012) (brackets added).

4

After the parties fully briefed these issues, the special master held a status hearing on May 11, 2017, during which she ordered the petitioner to file additional records from his August 2012 hospitalization. *See generally* Scheduling Order, May 11, 2017. Petitioner filed the requested records on June 22, 2017. *See* Pet. Ex. 10.

### 3. The Special Master's Decision

On August 15, 2017, the special master issued a decision denying petitioner's Vaccine Act claim (the "August 15, 2017, Decision"). *See generally* Dec. In that decision, the special master found that petitioner's claim was untimely, because the Vaccine Act's 36-month statute of limitations had run with respect to his claims. *Id*. at 9-10. And so, the special master granted the Secretary's motion to dismiss this matter. *Id*.

Specifically, in the August 15, 2017, Decision, the special master found that the evidence supported August 17, 2012, as the correct symptom onset date, due to evidence that petitioner made several calls to the "Call-A-Nurse" service on August 17 and 18, 2012. Dec. at 6; *see also* Pet. Ex. 7 at 238-39. And so, the special master concluded that the complete medical record "overwhelmingly identifies August 17, 2012 as the onset date[]" for petitioner's symptoms. Dec. at 6.

The special master also examined the question of whether the 36-month statute of limitations period under the Vaccine Act had elapsed, given the onset date of the petitioner's symptoms. In this regard, the special master found that the statutory period ends on the anniversary date of the event which triggers the beginning of the statute of limitations. Dec. at 8. And so, the special master concluded that the statute of limitations period in this case began on August 18, 2012, at 12:01 AM, and ended at midnight on August 17, 2015. Dec. at 6. Because petitioner filed his Vaccine Act claim on August 18, 2015, the special master concluded that petitioner's claim was untimely. *Id*.

In light of her conclusion that statute of limitations period expired before petitioner filed his claim, the special master considered whether the application of the doctrine of equitable tolling would be appropriate in this case. *Id*. at 4-5. In this regard, the special master considered petitioner's argument that the running of the statute of limitations should be tolled in this case, because his medical impairments rendered petitioner incapable of carrying out his

5

daily affairs "in a manner that would allow him to pursue his legal rights for a material period of time." *Id*. at 6.

The special master observed that petitioner's medical records detailed hospital admissions and that petitioner stated that he was non-ambulatory and bed-bound due to paralysis during his hospitalization. *Id*. The special master also observed that petitioner suffered from facial paralysis and difficulty eating and swallowing at the time. *Id*. But, the special master found that these symptoms were not evidence of a mental impairment that, either rendered petitioner incapable of rational thought or deliberate decision making, incapable of handling his own affairs, or unable to function in society. *Id*. (quoting *Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004)).

The special master also found that petitioner's claim that he lost the ability to communicate "[w]ithin days and weeks following his vaccination," was unsupported by the evidence. *Id*. at 6-7 (alteration in original). The special master did find, however, evidentiary support for petitioner's claim that he experienced "'persistent numbness in his feet and hands,' severe motor skill dysfunction and sensory impairment, difficulty ingesting food, fatigue, and [paresthesia], as well as a loss of independence resulting from diagnosis of CIPD. *Id*. at 7; *see also* Pet. Ex. 4 at 14-16. But, the special master concluded that these physical impairments did not affect petitioner's cognitive abilities in a way that would prevent petitioner from pursuing his legal rights to warrant the application of the doctrine of equitable tolling in this case.[4] *Id*. at 8.

As a final matter, the special master rejected three alternative arguments put forward by petitioner to support his contention that "extraordinary circumstances" warranted equitable tolling of the statute of limitations in this case. First, petitioner argued without success that equitable tolling should apply in this case because his injury was unknown during the early

---

[4] The special master did, however, acknowledge that petitioner may have suffered from dysphasia, which could certainly affect his ability to pursue a legal claim. Dec. at 7. But, the special master found that the evidence in petitioner's medical history from the time petitioner was diagnosed with that condition showed that petitioner retained his cognitive abilities. *Id*.; *see also* Pet. Ex. 6 at 27. And so, the special master concluded that there was no evidence that petitioner suffered a physical impairment that would justify equitable tolling. Dec. at 8.

6

stages, due to the evolving nature of GBS into CIDP. Pet'r's Opp. at 9-11; Dec. at 8. Based upon the Federal Circuit's decision in *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1338 (Fed. Cir. 2012), the special master found that "Congress made the deliberate choice to trigger the Vaccine Act statute of limitations from the date of occurrence of the first symptom or manifestation of the injury for which relief is sought, an event that does not depend on the knowledge of a petitioner as to the cause of an injury." Dec. at 8 (quoting *Cloer*, 654 F.3d at 1338). And so, the special master concluded that the trigger for the Vaccine Act's statute of limitations did not depend upon petitioner's knowledge of the cause of his injury. *Id.*

Second, the special master rejected petitioner's argument that extraordinary circumstances warranting equitable tolling were present, because his vaccine administrator failed to provide petitioner with a vaccine information sheet. *Id.* at 8-9. In doing so, the special master observed that it is well-established that ignorance of the vaccine injury compensation program "is not a proper basis for applying equitable tolling." *Id.*

Lastly, the special master also rejected the petitioner's argument that equitable tolling was appropriate in this case due to petitioner's alleged disadvantage given his status as a *pro se* petitioner. Dec. at 9. In rejecting this argument, the special master observed that petitioner had not been precluded from obtaining counsel prior to filing his claim. *Id.* The special master also observed that the vaccine injury compensation program will often pay attorneys' fees when petitioners are unsuccessful and that this practice increases the ease with which petitioners are able to procure representation regardless of their ability to pay. *Id.*; *see also* 42 U.S.C. § 300aa—15(e).

After considering the evidence and petitioner's various arguments in support of applying the doctrine of equitable tolling in this matter, the special master observed that the statute of limitations is "one of the few procedural safeguards that the [vaccine injury compensation program] has to provide the best guarantee of an evenhanded administration of the law." *Id.* Given this, the special master concluded that petitioner did not present evidence of any circumstance that would warrant the application of the doctrine of equitable tolling. Dec. at 9. And so, the special master denied petitioner's claim as untimely. *Id.*

### B. Procedural History

On September 13, 2017, petitioner filed a motion for review of the special master's August 15, 2017, Decision. *See* Mot. for Review. The Secretary responded to the motion for review on October 13, 2017. *See* Resp.

The petitioner's motion for review having been fully briefed, the Court resolves the pending motion.

## III.   STANDARDS FOR DECISION

### A. Vaccine Act Claims

The United States Court of Federal Claims has jurisdiction to review the record of the proceedings before a special master and, upon such review, may:

> (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
>
> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
>
> (C) remand the petition to the special master for further action in accordance with the court's direction . . . .

42 U.S.C. § 300aa–12(e)(2).

The special master's determinations of law are reviewed *de novo*. *Andreu ex rel. Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1373 (Fed. Cir. 2009). The special master's findings of fact are reviewed for clear error. *Id.* (citation omitted); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1345 (Fed. Cir. 2010) ("We uphold the special master's findings of fact unless they are arbitrary or capricious[]") (alteration not in original). The special master's discretionary rulings are reviewed for abuse of discretion. *Munn v. Sec'y of Dep't of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

In addition, a special master's findings regarding the probative value of the evidence and the credibility of witnesses will not be disturbed so long as they are "supported by substantial evidence." *Doe v. Sec'y of Health & Human Servs.*, 601 F.3d 1349, 1355 (Fed. Cir. 2010) (citation omitted); *see also Burns v. Sec'y of Dep't of Health & Human Servs.*, 3 F.3d 415, 417

(Fed. Cir. 1993) (holding that the decision of whether to accord greater weight to contemporaneous medical records or later given testimony is "uniquely within the purview of the special master"). This "level of deference is especially apt in a case in which the medical evidence of causation is in dispute." *Hodges v. Sec'y of Dep't of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993). And so, the Court will not substitute its judgment for that of the special master, "if the special master has considered all relevant factors, and has made no clear error of judgment." *Lonergan v. Sec'y of Dep't of Health & Human Servs.*, 27 Fed. Cl. 579, 580 (1993).

Under the Vaccine Act, the Court must award compensation if a petitioner proves, by a preponderance of the evidence, all of the elements set forth in 42 U.S.C. § 300aa–11(c)(1), unless there is a preponderance of evidence that the illness is due to factors unrelated to the administration of the vaccine. 42 U.S.C. § 300aa–13(a)(1). A petitioner can recover either by proving an injury listed on the Vaccine Injury Table (the "Table"), or by proving causation-in-fact. *See* 42 U.S.C. §§ 300aa–11(c)(1)(C); *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). And so, to receive compensation under the National Vaccine Injury Compensation Program, a petitioner must prove either that: (1) the petitioner suffered a "Table Injury" that corresponds to one of the vaccinations in question within a statutorily prescribed period of time or, in the alternative, (2) the petitioner's illnesses were actually caused by a vaccine. *See* 42 U.S.C. §§ 300aa–11(c)(1)(C)(i)-(ii), 300aa–13(a)(1)(A), 300aa–14(a); *see also Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010); *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1319-20 (Fed. Cir. 2006).

In addition, in Table and non-Table cases, a petitioner bears a "preponderance of the evidence" burden of proof. 42 U.S.C. § 300aa–13(a)(1)(A); *Althen*, 418 F.3d at 1278 (citing *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352-53 (Fed. Cir. 1999)). And so, a petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." *Moberly*, 592 F.3d at 1322 n.2 (brackets existing) (internal quotation omitted) (citation omitted); *see also Snowbank Enter. v. United States*, 6 Cl. Ct. 476, 486 (1984) (holding that mere conjecture or speculation is insufficient under a preponderance standard).

To establish a *prima facie* case when proceeding on a causation-in-fact significant aggravation theory, a petitioner must "prove, by a preponderance of the evidence, that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface*, 165 F.3d at 1352. In addition, petitioner must prove by a preponderance of the evidence: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between the vaccination and the injury. *Althen*, 418 F.3d at 1278. But, medical or scientific certainty is not required. *Knudsen by Knudsen v. Sec'y of Dep't of Health & Human Servs.*, 35 F.3d 543, 548-49 (Fed. Cir. 1994).

In *Althen*, the Federal Circuit addressed these three elements to prove causation-in- fact. *Althen*, 418 F.3d at 1278. All three elements "must cumulatively show that the vaccination was a 'but-for' cause of the harm, rather than just an insubstantial contributor in, or one among several possible causes of, the harm." *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006). In addition, if a petitioner establishes a *prima facie* case, the burden shifts to the respondent to show, by a preponderance of the evidence, that the injury was caused by a factor unrelated to the vaccine. *See* 42 U.S.C. § 300aa–13(a)(1)(B); *Shalala v. Whitecotton*, 514 U.S. 268, 270-71 (1995). But, regardless of whether the burden of proof ever shifts to the respondent, the special master may consider the evidence presented by the respondent in determining whether the petitioner has established a *prima facie* case. *See Stone v. Sec'y of Health & Human Servs.*, 676 F.3d 1373, 1379 (Fed. Cir. 2012) ("[E]vidence of other possible sources of injury can be relevant not only to the 'factors unrelated' defense, but also to whether a prima facie showing has been made that the vaccine was a substantial factor in causing the injury in question."); *De Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1353 (Fed. Cir. 2008) ("The government, like any defendant, is permitted to offer evidence to demonstrate the inadequacy of the petitioner's evidence on a requisite element of the petitioner's case[-]in-chief.").

## B. Statute Of Limitations And Equitable Tolling

The statute of limitations for claims brought pursuant to the Vaccine Act is set forth in section 16(a) of that Act. 42 U.S.C. § 300aa-16(a)(2). Specifically, the Vaccine Act provides, in relevant part, that:

**(a) General rule**. In the case of-- . . . .

> **(2)** a vaccine set forth in the Vaccine Injury Table which is administered after [the effective date of this part], if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury, . . . .

*Id.* And so, this statute of limitations begins to run on the date of occurrence of the first symptoms or manifestation of onset of the vaccine–related injury and petitions that have been filed more than 36 months after this date are time-barred. *Id.*; *Cloer*, 654 F.3d at 1324.

The Federal Circuit has held that the doctrine of equitable tolling applies to Vaccine Act Claims. *Cloer*, 654 F.3d at 1340-44; *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990) (establishing a presumption that suits against the government are subject to equitable tolling absent a provision by Congress to the contrary). But, the Federal Circuit has also recognized that this doctrine should be employed "sparingly" and only when "extraordinary circumstances" warrant its use. *Cloer*, 654 F.3d at 1344-45 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Irwin*, 498 U.S. at 96. Such extraordinary circumstances could include, for example, if a petitioner was the victim of fraud or duress, or filed a procedurally defective claim. *See, e.g.*, *Cloer*, 654 F.3d at 1344; *Bailey v. Glover*, 88 U.S. 342, 349–50 (1875).

In addition, the Federal Circuit has also recognized within the context of veterans' benefits claims that mental or physical impairment could be considered a potential ground for tolling the statute of limitations that applies to those claims. *See Barrett v. Principi*, 363 F.3d 1316, 1320 (Fed. Cir. 2004) (holding that equitable tolling is allowed because the mental condition preventing a veteran from timely filing is often the same illness for which compensation is sought); *see also Arbas v. Nicholson*, 403 F.3d 1379, 1381 (Fed. Cir. 2005) (holding that if mental illness can justify equitable tolling, physical illness can justify tolling for

11

veteran appeals claims as well); 38 U.S.C. § 7266(a). In such cases, the Federal Circuit has held that a court must focus on whether the particular infirmity prevented the veteran from engaging in "rational thought or deliberate decision making," or rendered him "incapable of handling [his] own affairs or unable to function [in] society," to determine if a mental or physical infirmity warrants equitable tolling. *Arbas*, 403 F.3d at 1381 (citing *Barrett*, 363 F.3d at 1321) (alterations in original).

IV. **LEGAL ANALYSIS**

In his motion for review, petitioner raises two objections to the special master's August 15, 2017, Decision. First, petitioner argues that the special master erred by failing to properly apply the doctrine of equitable tolling for physical impairment. Pet'r's Mot. at 2. Second, petitioner argues that the special master abused her discretion, and acted contrary to law, by ignoring his argument that *pro se* petitioners are at a disadvantage and that, for this reason, equitable tolling should apply to this case. *Id*.

The Secretary counters that the special master correctly determined that petitioner failed to show that his physical impairments justified equitable tolling of the Vaccine Act's statute of limitations. Resp. at 6-12. The Secretary also argues that the special master did not abuse her discretion, or act contrary to law, in rejecting petitioner's argument that equitable tolling should be applied in this case because he is a *pro se* petitioner. *Id*. at 12-15. And so, the Secretary requests that the Court deny petitioner's motion for review and sustain the decision of the special master. *Id*. at 15.

For the reasons discussed below, the evidence before the Court shows that the special master did not abuse her discretion, or act contrary to law, in reaching the decision to dismiss petitioner's Vaccine Act claim as untimely. And so, the Court **DENIES** the petitioner's motion for review and **SUSTAINS** the sound decision of the special master.

A. **The Special Master Reasonably Concluded That Application Of The Doctrine Of Equitable Tolling Due To Physical Impairment Was Unwarranted**

1. **Equitable Tolling Due To Physical Or Mental Impairment Is At Odds With The Vaccine Injury Compensation Program**

As a preliminary matter, the Secretary persuasively argues in his response that equitable tolling due to a physical or mental impairment is incompatible with the vaccine injury

12

compensation program.  Resp. at 8.  The Federal Circuit has recognized that the doctrine of equitable tolling may apply to Vaccine Act claims.  *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1340-44 (Fed. Cir. 2012) (establishing that Vaccine Act Claims are subject to equitable tolling).  But, the Federal Circuit has also recognized that this doctrine should be employed "sparingly" and only when "extraordinary circumstances" warrant its use.  *Cloer*, 654 F.3d at 1344-45 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Irwin*, 498 U.S. at 96.

Notably, the Federal Circuit has never held that the Vaccine Act's 36-month statute of limitations period may be equitably tolled, due to either a physical or mental impairment.  In fact, as the Secretary points out in his response, the Vaccine Act contains other safeguards to protect the legal rights of petitioners in the event of a physical or mental impairment.  *Id*. at 6-8.

For example, Section 11(b)(1)(A) of the Vaccine Act provides that minor or disabled petitioners may have their legal rights advanced and protected by a legal representative in Vaccine Act proceedings.  42 U.S.C. § 300aa-11(b)(1)(A).  The Vaccine Injury Table also expressly covers encephalopathy—an injury to the brain that can result in permanent cognitive impairment.  Resp. at 8.  Nonetheless, Vaccine Act petitions alleging a vaccine-caused encephalopathy must still be filed within the 36-month limitations period.  *See* Vaccine Injury Table, 42 U.S.C. § 300aa-14; *see also* 42 U.S.C. § 300aa-16(a)(2).  And so, the requirements of the Vaccine Act appear to be incompatible with the notion that a physical or mental impairment−alone−is sufficient to toll the Act's statute of limitations period.  *Cf. Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004) (holding that mental illness that is the direct result of an illness that rendered a veteran incapable of rational thought or deliberate decision making may warrant tolling of statute of limitations in veterans' benefits cases); *Arbas v. Nicholson*, 403 F.3d 1379, 1381 (Fed. Cir. 2005) (finding that equitable tolling of a limitations period is available for a veteran filing a notice of appeal due to physical illness).

The Court's misgivings about applying the doctrine of equitable tolling due to physical or mental impairment within the context of Vaccine Act claims notwithstanding, the record evidence in this matter shows that the special master reasonably concluded that equitable tolling due to petitioner's physical impairment was not warranted in this case.  And so, the Court must sustain the decision of the special master.

### 2. The Special Master Reasonably Concluded That Petitioner's Physical Impairments Did Not Warrant Equitable Tolling

Petitioner argues in his motion for review that the special master failed to properly apply the doctrine of equitable tolling due to physical impairment, because the evidence shows that his physical impairments rendered him incapable of handling his own affairs or unable to function in society. Pet'r's Mot. at 7-8. Petitioner further argues that the special master erred by "conflating the requirements for demonstrating cognitive and physical impairment sufficient to trigger the application of equitable tolling." *Id.* at 8. Neither of petitioner's objections to the special master's decision are substantiated by the record evidence.

First, petitioner's claim that his physical impairments rendered him incapable of handling his own affairs, or unable to function in society, is belied by the record evidence. In *Barrett v. Principi*, the Federal Circuit recognized that mental illness could be a potential ground for tolling the 120-day statute of limitations for filing a notice of appeal of a decision on a veterans' benefit claim with the United States Court of Appeals for Veterans Claims. *Barrett v. Principi*, 363 F.3d 1316, 1320 (Fed. Cir. 2004) (holding that equitable tolling is allowed because the mental condition preventing a veteran from timely filing is often the same illness for which compensation is sought). The Federal Circuit subsequently extended this view of equitable tolling to physical impairments in veterans' benefit claims cases in *Arbas v. Nicholson*, 403 F.3d 1379, 1381 (Fed. Cir. 2005). And so, within the context of veterans' benefits cases, the Federal Circuit has held that a court must focus on whether the particular infirmity either, (1) prevented the veteran from engaging in "rational thought or deliberate decision making," or (2) rendered him "incapable of handling [his] own affairs or unable to function [in] society," to determine if a mental or physical infirmity warrants application of the doctrine of equitable tolling. *Id*. (citing *Barrett*, 363 F.3d at 1321) (citations omitted).

Even if the Court were to accept that the framework articulated in *Barrett* and *Arbas* should be applied within the context of Vaccine Act claims, the record evidence in this case shows that the special master appropriately concluded that petitioner did not satisfy the high standard for allowing equitable tolling due to physical or mental impairment. Dec. at 6-9. Indeed, the record evidence here makes clear that the special master carefully reviewed petitioner's medical records and reasonably determined that petitioner's physical impairments did not render him incapable of handling his own affairs, or unable to function in society. Dec.

14

at 6-7. For example, the special master observed in the August 15, 2017, Decision that petitioner's medical records detailed hospital admissions and that petitioner stated that he was non-ambulatory and bed-bound due to paralysis during his hospitalization. *Id*. at 6. The special master also observed that petitioner suffered from facial paralysis and difficulty eating and swallowing at the time of his hospitalization in August 2012. *Id*.

While the special master recognized that petitioner's physical impairments impacted his ability to independently perform certain activities, the special master reasonably concluded that these impairments did not rise to a level of severity to warrant equitable tolling. Dec. at 7-8; *see Barrett*, 363 F.3d at 1321; *see also Arbas*, 403 F.3d at 1381; *see also* Pet. Ex. 4 at 14-16. In fact, as the special master found in her decision, petitioner's claim that he lost the ability to communicate within days and weeks following his vaccination in 2012 is not supported by the evidence. Dec. at 6-7. Petitioner also points to no evidence to explain how any other physical impairments associated with his CIPD prevented him from timely filing this matter. Pet'r's Mot. 9-12. And so, the record evidence makes clear that the special master reasonably determined that petitioner's impairments did not justify application of the doctrine of equitable tolling.

Petitioner's argument that the special master erred by conflating the requirements for demonstrating cognitive and physical impairment is similarly unsubstantiated by the evidence. *Id.* at 8. The record evidence shows that petitioner argued during the proceedings before the special master that his impairments rendered him incapable of carrying out daily affairs, "in a manner that would allow him to pursue his legal rights for a material period of time." Dec. at 6. And so, in the August 15, 2017, Decision, the special master considered whether the petitioner's physical limitations affected his cognitive abilities in a way that would prevent petitioner from pursuing his legal rights. Dec. at 7. Given petitioner's claim that equitable tolling is inappropriate because his impairments prevented him from pursuing his legal rights for a period of time, the special master appropriately considered whether petitioner's cognitive abilities impeded his ability to timely file this matter. Pet'r's Mot. at 9-12.

Petitioner's argument that the Court should set aside the special master's decision because the special master improperly focused on his cognitive abilities and speech, in assessing whether to equitably toll the statute of limitations, is also unavailing. *Id*. Even if the special

master erred in this regard, the record evidence makes clear that petitioner's physical impairments do not justify application of the doctrine of equitable tolling. Dec. at 6-8. The record evidence shows that the special master considered evidence showing that petitioner had experienced physical symptoms such as "'persistent numbness in his feet and hands,' severe motor skill dysfunction and sensory impairment, difficulty ingesting food, fatigue, and [paresthesia]." *Id.* at 6-7. Petitioner does not, however, point to any evidence in the record to show *how* these physical symptoms prevented him from timely filing his Vaccine Act petition. Pet'r's Mot. at 9-12. Given this, petitioner's second objection to the special master's decision simply lacks support in the evidentiary record.

In sum, petitioner bears the burden of showing that his failure to timely file this matter was the direct result of an illness that rendered him incapable of handling his own affairs, or unable to function in society. *See Bove v. Shinseki*, 25 Vet. App. 136, 144 (2011) (holding that petitioner failed to provide evidence that his symptoms of schizophrenia had manifested to such an extent that his failure to file his notice of appeal was the "direct result" of his medical condition); *Claiborne v. Nicholson*, 19 Vet. App. 181, 186 (2005), *aff'd*, 173 F. App'x 826 (Fed. Cir. 2006) (holding that mental illness of dementia and alzheimer's disease did not justify equitable tolling in filing a notice of appeal with Court of Veterans Appeals). Petitioner points to no evidence in the record to show that his CIDP has rendered him unable to handle his affairs, or that his failure to file a Vaccine Act petition before the 36-moth limitations period expired was the direct result of physical impairments due to his CIPD. Pet'r's Mot. at 2-5. And so, petitioner has not met his burden to justify an equitable tolling of the Vaccine Act's statute of limitations.[5]

### 3. The Special Master Correctly Weighed The Medical Evidence

Petitioner's argument that the special master failed to properly weigh the medical evidence in this case is equally unavailing. In his motion for review, petitioner argues that the

---

[5] Petitioner acknowledges in his motion for review that it was his lack of knowledge about the vaccine injury compensation program prior to August 17, 2015, that resulted in his untimely petition. Pet'r's Mot. at 15; *see also* Resp. at 14. It is well-established that unawareness of the vaccine injury compensation program is not a proper basis for applying equitable tolling. *See, e.g.*, *Wax v. Sec'y of Dep't of Health & Human Servs.*, No. 03-2830V, 2012 WL 3867161, at *11 (Fed. Cl. Spec. Mstr. Aug. 7, 2012), *aff'd*, 108 Fed. Cl. 538 (2012).

special master improperly allocated greater weight to his speech impairment and ignored, or disregarded, evidence regarding his other physical impairments. Pet'r's Mot. at 10. But, as discussed above, the record evidence shows that the special master carefully considered all of the medical evidence regarding petitioner's physical impairments in this case. Dec. at 7.

The special master observed in the August 15, 2017, Decision that petitioner's medical records showed that petitioner suffered from facial paralysis and difficulty eating and swallowing at the time of his hospitalization in August 2012. *Id*. at 6. As discussed above, the special master also considered medical evidence showing that petitioner experienced "'persistent numbness in his feet and hands,' severe motor skill dysfunction and sensory impairment, difficulty ingesting food, fatigue, and [paresthesias]," as well a loss of independence resulting from his CIPD diagnosis. *Id*. at 7; Pet. Ex. 4 at 14-16. Tellingly, petitioner does not identify any medical evidence that the special master failed to consider in his motion for review. *See generally* Pet'r's Mot. at 8-12; Dec. at 6. (stating that the special master based her decision on the "totality of the [medical] record"). And so, again, petitioner's objection to the special master's decision is not substantiated by the evidentiary record.

### B. The Special Master Appropriately Concluded That Application Of Equitable Tolling Due To Petitioner's Pro Se Status Is Unwarranted

As a final matter, petitioner's claim that the special master erred by ignoring his argument that equitable tolling is appropriate in this case because *pro se* petitioners are disadvantaged is also unsupported by the evidentiary record. In the August 15, 2017, Decision, the special master rejected petitioner's argument that equitable tolling was appropriate in this case due to his alleged disadvantage status as a *pro se* petitioner. Dec. at 9. In rejecting this argument, the special master observed that petitioner had not been precluded from obtaining counsel prior to filing his Vaccine Act claim. *Id*. In addition, the special master correctly observed that the vaccine injury compensation program will often pay attorneys' fees even when a petitioner is unsuccessful, and that this practice increases the ease with which petitioners may procure legal representation. *Id*.; *see also* Vaccine Rule 15(e).

The special master's conclusions in this regard are reasonable. The Federal Circuit recognized in *Cloer* that equitable tolling of the Vaccine Act's statute of limitations should not be applied simply because the application of the statute of limitations would otherwise deprive a

17

petitioner of the opportunity to bring a claim. *Cloer*, 654 F.3d at 1344-45; *see also Irwin*, 498 U.S. at 96; *Wax v. Sec'y of Dep't of Health & Human Servs.*, No. 03-2830V, 2012 WL 3867161, at *3 (Fed. Cl. Spec. Mstr. Aug. 7, 2012), *aff'd*, 108 Fed. Cl. 538 (2012). Rather, petitioner must show diligence in pursuing his rights. *Cloer*, 654 F.3d at 1344-45 (citing *Pace v. DiGugliemo*, 544 U.S. 408, 418 (2005)). And so, courts have recognized that extraordinary circumstances that justify equitable tolling exist, only in limited situations, such as situations involving deception or a procedurally defective pleading that was timely filed. *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Petitioner identifies no such extraordinary circumstances here. In fact, petitioner neither shows that he diligently pursued his rights before the statute of limitations period expired in this case, nor that his inability to electronically file a Vaccine Act petition warrants application of the doctrine of equitable tolling. In this regard, petitioner acknowledges in his motion for review that he first discovered the vaccine injury compensation program on August 17, 2015— just before the expiration of the statute of limitations period for his claim. Pet'r's Mot. at 15. Although petitioner alleges that this discovery occurred "after a diligent inquiry into vaccine-related injuries and remedial avenues," he also provides no information about the nature of this inquiry to show that he diligently pursued his claim. *Id*. at 15-16.

In addition, as the Secretary observes in his response, petitioner also fails to explain why he could not have availed himself of a courier or process server to ensure that his petition was timely filed with the Court. Resp. at 12-13. And so, even if the Court were to accept that petitioner's *pro se* status creates a disadvantage, petitioner has not demonstrated that equitable tolling due to such status is appropriate in this case.

## V.   CONCLUSION

In sum, petitioner has not shown that the special master erred in applying the law, or in considering the record evidence, in reaching her sound decision that equitable tolling due to physical impairment or his *pro se* status was unwarranted in this case. While petitioner's case is certainly a sympathetic one−given that he missed the statute of limitations deadline by a matter of hours−he simply has not shown that the physical limitations associated with his CIPD, or his

*pro se* status, rendered him incapable of timely filing his petition. And so, for these reasons, the Court:

1. **DENIES** petitioner's motion for review of the special master's August 15, 2017, Decision; and

2. **SUSTAINS** the decision of the special master.

The Clerk is directed to enter judgment accordingly.

Each party to bear its own costs

Some of the information contained in this Memorandum Opinion and Order may be considered privileged, confidential or sensitive personally-identifiable information that should be protected from disclosure. And so, this Memorandum Opinion and Order shall be **FILED UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted prior to publication. The parties shall also **FILE**, by **March 7, 2018**, a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
Judge